Isacharia Noah also a record slender, 4-pointer gun-type opponent in the United States on four  I'm sorry, it has nothing to do with your case. Thank you. Thank you, Judge. I just wanted you to be assured of that. Good morning. My name is Edward Rimza, and I represent the appellant in this case, Calvin Greer. I just would also like to reserve two minutes for rebuttals, please. That's granted. Thank you. Your Honor, please, the court. The central question in this case is whether or not the district court committed a reversible error when it determined that it could not depart from the base offense level, which would be in contradiction to this court's holding in the United States versus Shoup. I'm sure the court's familiar with the facts of this case, but essentially the district court did find that Mr. Greer was a career offender. However, the district court also determined that it could only depart horizontally on the criminal history category. Was Shoup out when Judge Kane so held? Yes, Your Honor. Shoup, I believe, was 1993, correct? That's right. I believe Judge Pollack was actually on the panel who decided that case. I was much younger then. Shoup directly supports your position. It does indeed, Your Honor. I'm not so sure we got it right in Shoup. I'm having trouble reconciling the language of 4A1.3 with Shoup. Can you point to me where it allows this to be done? Because as I read the language of 4A1.3, it indicates that you can move horizontally. Basically, if you think the criminal history category over-represents, then you can go from a 3 to a 2, correct? Correct. And if you think it under-represents, you can go from a 4 to a 5, correct? Correct. And then the guideline tells you that if you start at a 6, we all know from the table, there's nowhere else to go, right? Right. So then it tells you that you can go vertically down, right? No, I'm talking about calculating the actual range. But where is the language of 4A1.3? I don't see it in the prior iteration or in the current iteration. All it tells me as I read it is that when you start at a 6, the judge has the power to go down vertically one more. But I don't see anything else about allowing a vertical move besides that. Your Honor, there's two responses to that. First of all, I think Shoup certainly does contradict the most recent version of 4A1.3, where 4A1.3 says you can only depart horizontally from the criminal history at one level. But in response to that, I would note two things. Number one, 4A1.3, and I believe it's B3 that's in question, B3A if I'm not mistaken. The one point I would make is that it's only a policy statement. And certainly, as this Court has held in United States v. Gaskill, is that the policy statements do not have the same authority as the guidelines, number one. Didn't we say the contrary in Shoup? Didn't Judge Sirica say that this policy statement, 4A1.3 as it stood initially in 2003, that it was being treated by this Court as authoritative? I believe there was that language in Shoup, yes, Your Honor. So there'd be no reason to not regard the present version as authoritative, is there? Well, that may be. And I know there is that dispute with the Gaskill holding. But the other point I would say— But 4A1, but so far we're only talking about criminal history. What about offense level? Why is there no possibility of moving down on the offense level? Well, it's our position, Your Honor, that Shoup provides that. Now, with regard to Judge Hardiman, the whole— the Shoup decision, of course, did allow both a horizontal and a vertical departure. But again, directing— But wasn't it only criminal history? No, it also was— Oh, did it affect the offense level? Correct. But I think the lasting holding of Shoup, the reason why the Shoup— I think the Court in Shoup, the panel recognized in Shoup, was the fact that career offender designation is different. I mean, typically when you have a criminal history, the criminal history only pertains to the— determines the criminal history category. When it's a career offender designation, the criminal history is significant because it affects not only— everything is driven by the criminal history. It determines both the criminal history category as well as the offense level when a person has that career offender designation. So I believe that was the— the Shoup Court did recognize the significance of the career offender designation and its impact on both the offense level as well as the criminal history category. Mr. Rimza, how do you reconcile your argument with what was said by the Commission in explaining the amendments to 4A1.3? Well, the Commission talks about this emergency amendment, continues the Commission's work in the area of departures in Section 401M of the Prosecutorial Remedies and Other Tools and so forth, Protect Act, and directs the Commission to promulgate appropriate amendments and sentencing guidelines, policy statements, and official commentary to ensure that the incidence of downward departures is substantially reduced. Well, Your Honor, I think the— I guess the simple response to that is had the— excuse me, had the Sentencing Commission wanted to preclude a district court from departing vertically, it simply just could have added that sentence. I mean, the Commission is very good at making these rules and these policy statements. Certainly, if the Commission's intent was to preclude a district court from departing vertically, it could have simply just added that sentence. Was there a general history other than Shoup that announced a practice which obviously seems at least in tension with this rule? I mean, do we have reason to think that the Commission was intending to leave Shoup undisturbed? That certainly is my position, Your Honor. Did anyone mention Shoup before the district court? I mentioned it in my briefs to the district court and did argue at sentencing that the court was permitted to depart vertically as well. I would also note, Your Honor— Because the plain language says you can't, but the case that we decided says you can. Correct. That's why you should win. Correct. And I would also— But isn't this different, though? I mean, Shoup was decided when the guidelines were mandatory, and it's not unusual in the last few months to see cases coming to us where the argument is about the correct calculation of the guidelines range, but as we all know in the post-Booker era, that's really not where the action is anymore, right? Because it was supremely important back then, pre-Booker, but now we're just fighting about the step two calculation of Gunter. And even if Shoup were to be reconsidered by our court, you still have an opportunity under 3553A to get a nice variance, even if under step three of Gunter, even if step two of Gunter doesn't go your way, right? That's correct, Your Honor. But I would just note in response that the court in—with regard to the amendment in 2003, I still don't think that had any effect on the court, the district court, departing vertically. And I think the real issue in this case is the fact that the judge did not recognize that authority to do it. So I think there's— But what gave her the authority to go vertically other than Shoup? Well, vertically do you mean down to zero? No, offense level. Offense level. Well, I think— I can do that horizontal, but that's all right. No, I'm still having visions of the table. You know, when we district judges pull out the table, you know, the top is the criminal history, the offense level— Yes, Your Honor, that's what I'm referring to. I'm sorry. All right. Well, I think certainly in the post-Booker world, she could have departed through some of the other arguments we made in our basis for a departure under 5H1.6, extraordinary family circumstances. Well, but we're setting those aside, I think, for now. Right. I mean, now we're just talking about whether— Guideline calculations. Exactly. The guideline calculations. Exactly. Well, I think, again, I think the—apart from the—in the post-Booker world, the Court could have certainly gone to Part 3 and given some type of variance. But the real question is, is that the judge did not believe that she could depart vertically. And that's where the reasoning is flawed, given the fact that she knew that she should have been aware that she wasn't precluded from going down vertically. Well, and I understand your position. That's procedural unreasonableness. Correct. If you're right on that, that requires a remand. Correct. Because she didn't get the guidelines calculation right. But I also would note that this Court, it wasn't a published opinion, but I cited United States v. Henry was a panel of this Court that at least cited Shoup and recognized the lasting validity of Shoup, and that was a 2006 Third Circuit case. The other point I would like to make is the Second Circuit has a—has recognized this position to depart vertically in a case called United States v. Rivers, which was a 1995 case. And since that time, the district courts, while I recognize those courts are not certainly authority here, I do think that it is persuasive authority that these district courts in New York, most recently United States v. Hodges, which is a February 12, 2009 case, did cite the Rivers case to say that there is a right to depart vertically as well. But those are, leaving aside the 2009 case, those are cases before the guideline was amended. Isn't that right? No, the guidelines were amended, I believe, in October of 2003, Your Honor. And there were several other district court cases that were out of the Second Circuit that also recognized that. No, but Rivers was 95. Rivers was 95, and there was also Mishoe that also stood for the same proposition. But nevertheless, the district courts in New York and Vermont and Connecticut have all recognized the lasting authority of the Rivers case and the Mishoe case that you can depart vertically. Is it your position that Shoup is no longer good law? No, it's quite to the contrary, Your Honor. Oh, no, that's right. I expect that side. That was just a test question. Where are these Vermont and New York cases? Judge, I think I may have. Oh, is it Colon is a Vermont case and Hernandez is a New York case? Correct. In fact, there was also, subsequent to my brief being filed, I have also a Moye case, M-O-Y-E, which was January the 13th, 2009. That was out of a district court in Connecticut. M-O? M-O-Y-E. And they hold? They hold that the Rivers case and the Mishoe case from the Second Circuit that recognize the ability to depart vertically is still lasting authority and is still in effect. So, as I understand your position, you want us to reverse because the district court didn't understand that she did have the authority to depart, whether or not she chose to use it. That's precisely my point. That's basically my point. That's precisely my point. Yes, Judge. Do you have any more questions? No. You okay? Thank you. Thank you very much. Good morning, Your Honors. My name is William Behe. I represent the United States in this matter. The first thing I'd like to address, and I know Mr. Rimsa has cited to a number of district court cases that he feels are instructive. I have not found a single case that presents the issue squarely or presented the issue squarely as to whether or not other circuit courts' opinions, Shoup or Rivers, whichever you're dealing with, still survive after the amendment that was made to the guidelines in 2003. There are a number of cases that will just simply state that the court has the right to depart both horizontally and vertically, but it's never been an issue in those cases whether, under the way the guideline was amended in 2003, whether those cases survived. Do you think Shoup is still good law? I do not. But what in the language? I can't find any language in the 2003 amendment that tells me that Shoup is no longer good law. That, of course, begs the question of whether we got it right the first time in Shoup. But what language can you point to in the amendment that tells us that Shoup is no longer good law? Well, the language here that, based on the amendment, Amendment 651, in Section B, there is a standard for downward departure. Then the next section is the language that deals with prohibitions. And then in Subsection 3 is language that deals with limitations. And in that section, specifically Paragraph A, the extent of a downward departure under this subsection for a career offender, with a meaning of 4B1.1, may not exceed one criminal history category, period. It seems to track the prior language that we interpreted in Shoup, though. Well, except that they amended this in 2003 to make sure that it was explicit that the extent could only be one criminal history category. Wasn't that set in 4A1.3, as it stood before the amendment? Well, except that if you look at the explanation of the sentence in commission in 651, it says Section 4A1.3 also contains limitations applicable. And that is to a career offender that may not exceed one criminal history category. If that was what the amendment, if the amendment doesn't mean that, then the amendment is meaningless. Because if you can depart only one criminal history category to 5, but you can go as far as you want to vertically, you could go down to 0 to 6. And 0 to 6 is the lowest offense level in every criminal history category. But I thought in Shoup we said you could go vertically one level. We didn't say you could climb the ladder all the way to the 0 offense level. Well, in this case, I think the guideline is specific, and the court applied the guideline as it says. And that is that you could depart only one criminal history category. But the guideline in Shoup, the government argued in Shoup that 4A1.3 only mentions downward departures in the criminal history category. Correct. The government argued that the language says move horizontally. The language says nothing about moving vertically. And this court held you can move vertically anyway. So why wouldn't that same rationale obtain to the 2003 amendment? I guess what I'm asking is why aren't you just asking us to revisit Shoup and make all kinds of policy arguments about how now that the guidelines are advisory, this really isn't quite so critical. I think I do that in my second argument, which deals with whether or not the sentence imposes reasonable. And essentially the argument is this, that if the guidelines mean what they say and say what they mean, which is you can only depart one criminal history category, the court is not precluded from taking into consideration the criminal history when it considers the 3553A factors. And in this particular case, since Shoup was decided pre-Booker and the landscape for the guidelines have changed since then, it makes eminent sense that the guidelines mean exactly what they say. Again, if the court is to consider a variance based on 3553A factors, then the court can go to the offense level and depart where the court believes. Not depart, vary. To vary. I'm sorry. Departure is under 4A1. Yes, Your Honor. Am I not right that you advise the district court at the sentencing that Mr. Greer was entitled, in the sense that the district court had authority, to reduce the offense level as well as the criminal history category? The district court asked me where would that take us in the guidelines. I believe at that point I indicated it would take them to a level 6 to 12 months or whatever it is. It was my, as I look at it, I'd like to say it wasn't me at sentencing, but it was me at sentencing. My view was incorrect, and the district court consulted a probation officer who read to the court what the guidelines were. And after the judge said that, Your Honor, I specifically said to the court, which is at page 25 of the record in this case, that I think the court is correct that, I'm sorry, it's at page, it is at page 16 of the appendix, after Judge Cain says I'm only able to depart one criminal history category and will stay within the offense range, I say, as I'm listening to Judge Cain and Mr. Hersog, it's clear to me that it is a correct analysis, that the career offender does apply. It's a question of whether or not it would state the over-seriousness of it. That would take it to a category 5, and then once we arrive at what the advisory guideline imprisonment range would be, then after considering the 3553A factors, the court can decide whether or not at that point how much of a variance would be appropriate at that. So while I artfully or babbled through some of the beginning of the sentencing and probation department, as they do, they live, breathe, and sleep the guidelines correctly, inform the court of what you could do, I agree that you can depart one criminal history category, and under Section 3553A, the court can now consider, and the judge did, she said I'm taking into consideration the facts of those prior criminal offenses. I'm taking into consideration the family circumstances in this. Are you convinced, I'm not convinced, that if she thought she had authority to do something else, she would have still gone down? I mean, she went down as far as she thought she could go down, short of reexamining the career offender issue, which I wanted to ask you about also. Could she have done that? I mean, one of the offenses was for carrying a little bit of marijuana in his shoe when he went into prison. That's a pretty minor offense, to make somebody a career offender. Well, there was no objection that technically it is correct that you're characterized as a career offender, because there were two drug trafficking convictions or possession with the intent to prepackage marijuana in a prison setting. I think that's a fairly serious offense, but in the scheme of things, I agreed. I thought that based on the age of those and the circumstances, that the court could well consider that the criminal history category overstated the seriousness of it. But I don't believe there's anything in this record that suggests that Judge Kane, had she thought that she could depart vertically, would have done so. You don't know, do you? Well, you can look at the record, and she says based on all of the factors she goes through, the concern of recidivism, the fact that he was involved in trafficking this third time, that she found that the guideline range was reasonable. But she went as low as she thought she could. Now, I don't believe that. On step two. In step two, but on the third. Step three, my reading of the record was she knew that she could have gone to probation if she thought that was the proper sentence, and as long as she justified it and made a record under all the 3553A factors. That's exactly my point. We're talking about whether she got it right at step two. That is correct. And my position is she did, but even if she didn't, there's nothing to suggest that the sentence would be any different, would this matter be sent back to Judge Kane, because all of her comments and her observations on the step three part of the sentencing indicates that she found the sentence in that range, even at the low end, was reasonable. Well, but under Rita, though, I mean, the Supreme Court's told us if you miscalculate the guidelines, you've got to send it back down. Well, I don't think this is a miscalculation of the guidelines where. Well, if Mr. Rims is correct and she controls, clearly she miscalculated the guidelines. She may have misunderstood, but there's nothing that tells her where she would have to go. It's just a question of could you exercise discretion at two, and can you exercise your discretion at three. I guess that's my point. Maybe we disagree on that, and maybe you can help me with that. To me, step two is not about discretion. Step two is about that mechanical, robotic almost application that trial judges almost uniformly railed against throughout the country. Step three is where the discretion comes in. Step two is almost always about just picking the right box. Well, I suppose my point in that regard is once she makes a determination that she can depart under the guidelines, that decision is what is discretionary. Yes, three. No, that's step two. If she decides that she's not going to depart, that's an exercise of discretion. There's nothing mechanical or robotic about that. Right. That was my point. If you go to three. That's a good clarification. But still, I think even if we believed there was a 90 percent chance we'd end up with the same sentence, I think the Supreme Court precedent requires us to at least send it back and tell her that she had the power to vertically depart. And then she may choose to exercise that discretion not to do so. I think you could say that there was harmless error here if, in fact, by in an opinion saying, we believe that the pre-Booker case law that addressed the guidelines before the amendment somehow still exists and the court should follow that when dealing with this new guideline. But in this case, a review of the record in Judge Kain's statements for the reason for the sentence imposed and her clear understanding, she could have said, I'm denying the request for a downward departure, but under 3553 exercising my discretion and realizing I have the discretion to vary from whatever the guideline range, I'm sentencing you to probation. She didn't do that. No, she didn't, but she articulated clearly for the record what I think is unmistakable to anybody who reviews this record, how she thought this was a serious offense, how she was concerned about recidivism, that she specifically considered the facts of the underlying prior criminal offenses and the defendant's family situation. I would note in the appellant's brief, although he decries the sentence imposed as being unreasonable, he never addresses at all the things that Judge Kain did say. And I think that that is very important. I would also note that the appellant states that there are other cases that have held that shoot still applies and that there are a number of courts that routinely continue to apply. I don't think so. I believe that this is the only case that this court will find where the issue has squarely been presented based on the post-Booker sentencing landscape and the amendment to the guidelines in 2003. Mr. Beattie, what would give this panel the authority to say shoot is no longer good law? Wouldn't we have to embank it under our rules? The only way we could not apply shoot that I can think of would be to say that there have been changes in the underlying law. And can you, is it your suggestion that something has happened since the shoot that would give us the panel? Because as a panel, we are, and this court, as you know, sticks to its precedent. Can you give us any reason why, anything that happened that would give us that authority? Booker and the amendment to the guideline in 2003. Go ahead, Judge. I guess I just don't know what the concept is about Booker. Why does that change what the guideline? Well, the guidelines are now advisory. The court has discretion under Section 3553A to vary from what the court determines to be the advisory guideline imprisonment range. How does that change shoot? Because calculating the guidelines properly is not advisory. No, that is correct. So if we're talking about Step 2 Gunter, I mean, Booker doesn't expect that. I guess it comes down to if the court concludes that shoot survives and that the court incorrectly calculated the guidelines under Step 2, that would be a problem. My position is that based on the court's ability under Section 3553A to vary from the guideline range and the court exercising its discretion as it did, realizing that it could depart, finding that range reasonable, nonetheless, that if it was error, which I don't believe it is, that it would be harmless at best. That there would be, based on this record, there's nothing that would suggest a different sentence would impose. Mr. B., if you were conducting a sentencing in my court and I said, I think shoot is the law of the Third Circuit, whether we like it or not, we're bound here in the district court to follow it, you would then be saying to me, well, it's a different scenario now. Booker has been decided. And I'd say, well, Booker gives me more discretion than I had before. It doesn't restrict me with respect to whatever Shoup said. I can look at the text of the amended 4A1.3, but there I find language which seems to me the same language essentially that was there under Shoup. Well, if Your Honor, if I was appearing before Your Honor for sentencing and that was your position on it, I would suggest that you should depart only one level and not depart any offense level and that we can deal with whether or not there should be a variance from the offense level under Stage 3 and the Section 3553A factors. But that doesn't really help this panel as to what it does with Shoup. Mr. B. I guess you can answer that. Does the fact that the amendment to the guidelines antedated Booker, doesn't that rather limit the force of the argument that the guidelines now mean something different than they did before? You're really now relying on Booker as overturning without regard to the amendment of 4A1.3. You're looking to Booker by itself as requiring this court to change its view about Shoup. Is that right? No. I'm not. Okay. I think we've exhausted Mr. B. and maybe any questions that we have. You can ask. Unless you have something else to say to us, we'll take it under. I hope I've had answers. Yes. Thank you. Thank you. Thank you, Your Honor. Your Honor, for the purposes of many of the questions, I would just simply rely on my main argument. Okay. Do you have any questions for us? No. No. Okay. Gentlemen, it was well argued that it's not an easy case for us. Thank you. Thank you very much.